UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTHOPHER B.P.,<br><br>Plaintiff,<br><br>v.<br><br>WARDEN, CENTRAL VALLEY ANNEX, et al.,<br><br>Respondents. | No. 1:26-cv-06804-TLN-AC<br><br>A# 244-333-376<br><br>**RELEASE ORDER** |

This matter is before the Court on pro se Petitioner Christhopher B.P.'s[1] ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) Respondents filed an Answer to the Habeas Petition. (ECF No. 8.) Petitioner filed a reply. (ECF No. 11.) For the reasons set forth below, Petitioner's habeas petition (ECF No. 1) is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual and Procedural Background

This matter arises out of Petitioner's constitutional challenges to his civil immigration detention. (ECF No. 1.) Petitioner entered the United States on or around January 1, 2024 to seek asylum through the CBP One program. (ECF No. 1 at 11; ECF No. 8 at 9, 24.) After encountering U.S. Border Patrol, Petitioner was issued a Notice to Appear and released into the United States. (ECF No. 8 at 9–12.) On November 4, 2024, an immigration judge terminated Petitioner's removal proceedings. (*Id.* at 14.) Petitioner joined a religious community and worked to provide for himself. (ECF No. 1 at 10.) Petitioner argues he has a work permit and will seek employment if released. (ECF No. 11 at 1.)

On March 29, 2026, Petitioner was charged with possession of a controlled substance (cocaine) less than one gram in violation of Texas Health and Safety Code 481.115(b). (ECF No. 8 at 29.) On April 24, 2026, while in custody of local law enforcement, the Department of Homeland Security ("DHS") lodged an immigration detainer for Petitioner. (*Id.* at 41.) On May 20, 2026, Petitioner pleaded guilty to possession of a controlled substance (cocaine) under one gram, a misdemeanor crime, and was sentenced to 56 days in county jail, with 28 days of jail credit. (ECF No. 8 at 29; ECF No. 11 at 1.) This is Petitioner's only criminal conviction. (ECF No. 8 at 31–39; ECF No. 11 at 1.)

Petitioner was detained at Williamson County Jail and, on May 21, 2026, DHS took him into custody. (ECF No. 8 at 2.) That same day, DHS issued Petitioner a Notice to Appear charging him as inadmissible under 8 U.S.C. § 1182(a)(7)(a)(i)(I) for failing to possess proper admission documents. (*Id.* at 17–20.) Neither party presents evidence Petitioner received a bond hearing.

On August 25, 2026, while detained at the Central Valley Annex Detention Facility, Petitioner filed the instant Petition for a Writ of Habeas Corpus.[2] (ECF No. 1.) Petitioner challenges the lawfulness of his civil detention and seeks immediate release. (*Id.* at 4.)

///

[2] The same day, Petitioner filed a motion for a temporary restraining order, motion to proceed in forma pauperis, and a motion for appointment of counsel. (ECF Nos. 2, 3, 4.)

## II. Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. Analysis

Petitioner puts forth four claims: (1) his detention violates Fifth Amendment procedural due process; (2) his detention violates Fifth Amendment substantive due process; (3) his re-arrest constitutes an unreasonable seizure in violation of the Fourth Amendment; and (4) if Petitioner is a *Garro Pinchi v. Noem* class member, then his detention violates the Administrative Procedure Act.[3] (ECF No. 1 at 25–29.) Respondents argue: (1) Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(A); (2) Petitioner's detention is constitutional; and (3) Petitioner has failed to request a *Joseph* hearing and therefore has not exhausted administrative remedies.[4]

---

[3] The Court determines Petitioner is unlawfully detained in violation of Fifth Amendment procedural due process and must be released. Therefore, in the interest of judicial efficiency, the Court declines to review Petitioner's other bases for relief.

[4] Respondents argue that Petitioner should be required to exhaust his administrative remedies by requesting a hearing pursuant to *Matter of Joseph*, 22 I&N Dec. 799 (BIA 1999). (ECF No. 8 at 2–3.) The Court finds after consideration of the factors articulated in *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007), that prudential exhaustion is not required. First, an administrative appellate record is not necessary to reach a proper decision on Petitioner's due process claim. Second, any risk of deliberate bypass of administrative procedures is reduced by the fact that district courts will only have jurisdiction in the "rare case[s]" where future petitioners allege a "colorable" constitutional or legal challenge to the government's procedures. *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (citing *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267,

(ECF No. 8 at 2–6.)

The Court first addresses detention authority before turning to Petitioner's Fifth Amendment procedural due process claim.

A. <u>Detention Authority</u>

*i. 8 U.S.C. § 1226(c)(1)(A)*

Respondents argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c). (ECF No. 8 at 1.)

Section 1226(c)(1)(A) states the "Attorney General shall take into custody any [noncitizen] who [] is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title." 8 U.S.C. § 1226(c)(1)(A). Section 1182(a)(2) enumerates various categories of crimes, including, as relevant here, crimes involving controlled substances. 8 U.S.C. § 1182(a)(2)(A)(i).

"[T]he plain language of 8 U.S.C. § 1226(c)(1)(A) requires an administrative charge of inadmissibility by reason of having committed an offense covered in 8 U.S.C. § 1182(a)(2) as prerequisite to mandatory detention under that provision." *Colmenares-Pinto v. Warden of Golden State Annex ICE Det. Facility*, No. 1:26-cv-00812-DAD-SCR, 2026 WL 923804, at *2 (E.D. Cal. Apr. 6, 2026), *report and recommendation adopted*, 2026 WL 1430913 (E.D. Cal. May 21, 2026). Indeed, this District routinely finds that § 1226(c)(1)(A) does not authorize mandatory detention where the government has failed to charge a noncitizen with inadmissibility for an offense covered by § 1182(a)(2). *See id.*; *Miao v. Chestnut*, No. 1:26-cv-1271-KES-SKO,

---

1271 (9th Cir. 1991)). Finally, for the reasons set forth below, seeking a *Joseph* hearing in this case would be futile and it is unlikely that the agency would correct its own mistake. *See, e.g., Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026) ("Where the issue is whether procedural due process was violated, the Court finds no reason to delay review in favor of allowing the BIA to possibly correct an error."); *Betancourt Ulloa v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-03360-DAD-CKD, 2026 WL 2389805, at *1 (E.D. Cal. Aug. 17, 2026) (finding *Joseph* hearing futile where the Notice to Appear did not charge petitioner as inadmissible for a criminal offense even though government asserted 8 U.S.C. § 1226(c) as a post hoc rationalization to justify detention without a hearing). Additionally, because of the significant liberty interest at stake in this case, irreparable injury would result from requiring exhaustion. *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). Thus, the Court declines to require prudential exhaustion in this case.

2026 WL 947020, at *3 (E.D. Cal. April 8, 2026); *Lopez v. Warden, California City Det. Facility*, No. 1:26-cv-4852-DC-JDP, 2026 WL 2280944, at *3 (E.D. Cal. Aug. 7, 2026).

The Board of Immigration Appeals has ruled similarly, and further explains that, although the government may later cure the failure to charge the basis for mandatory detention, it must be rectified with proper notice and an opportunity to challenge detention:

> Where the ground for removal subjects [a noncitizen] to mandatory detention, the charging document serves as notice to the [noncitizen] of the circumstances relied on by the [Department of Homeland Security] to detain him. However, where the basis for detention is not included in the charging document, the [noncitizen] must be given notice of the circumstances or convictions that provide the basis for mandatory detention and an opportunity to challenge the detention before the Immigration Judge during the bond redetermination hearing.

*Matter of Kotliar*, 24 I&N Dec. 124 (BIA 2007).

A Notice to Appear is the typical charging document in immigration proceedings. 8 C.F.R. § 1003.13; *see also* 8 U.S.C. § 1229(a)(1) (the Notice to Appear must specify "[t]he nature of the proceedings against the [noncitizen]," "the legal authority under which the proceedings are conducted," and "the acts of conduct alleged to be in violation of the law.").

Taken together, where the government has failed to charge or notify a detainee of an offense covered by § 1182(a)(2), § 1226(c)(1)(A) does not govern their detention.

Here, Petitioner has two Notices to Appear, both of which list the same single basis for removability:

Notice to Appear dated January 1, 2024:

> 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

(ECF No. 8 at 12.)

///

Notice to Appear dated May 21, 2026[5]:

> 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

(*Id.* at 20.) The Court provides both Notices to Appear for a complete factual record. The May 21, 2026 Notice to Appear is operative as Petitioner's immigration proceedings under the January 1, 2024 Notice to Appear were terminated in November 2024. (*Id.* at 14.) Petitioner is charged with inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as a noncitizen who, at the time of his application for admission, did not have a valid entry document and valid unexpired passport.[6] (*Id.* at 20.) The operative Notice to Appear does not state that Petitioner is charged with inadmissibility under § 1182(a)(2), nor does it reference his criminal conviction. (*Id.*) In other words, the operative Notice to Appear does not charge or notify Petitioner of any offense giving rise to detention under 8 U.S.C. § 1226(c)(1)(A). (*Id.*) Respondents provide no other notice of detention authority. Nor do Respondents argue Petitioner was sufficiently notified or provide any authority for the proposition that the government may detain noncitizens under § 1226(c)(1)(A) without notifying them of the basis for mandatory detention. To permit otherwise would raise serious due process concerns.

Accordingly, the Court finds Petitioner is not properly subject to detention pursuant to 8 U.S.C. § 1226(c). *See Betancourt Ulloa v. Warden, California City Correctional Center*, No. 26-cv-03360-DAD-CKD, 2026 WL 2389805, at *2 (E.D. Cal. Aug. 17, 2026).

*ii. 8 U.S.C. § 1226(a)*

Respondents do not present any alternate bases of authority for detention. However, having found 8 U.S.C. § 1226(c) does not govern, the Court determines Petitioner's detention is

---

[5] Respondents state this Notice to Appear is dated May 10, 2026. (ECF No. 8 at 2.) The Court understands this is a typographic error. (*Id.* at 17–20.)

[6] Immigration and Nationality Act § 212 is codified at 8 U.S.C. § 1182.

governed by 8 U.S.C. § 1226(a).

Two statutory sections govern the detention of noncitizens prior to a final order of removal: 8 U.S.C. §§ 1225 and 1226. Section 1226 "authorizes the Government to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added). Detention pursuant to § 1226(a) is discretionary and noncitizens detained under such authority are entitled to a bond hearing. *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1167 (9th Cir. 2026).

Petitioner lived in the United States for over two years when he was arrested by local law enforcement in Texas. (ECF No. 8 at 9, 23.) Individuals like Petitioner who are "present without admission who are apprehended in the interior of the United States" are subject to detention under 8 U.S.C. § 1226(a). *Rodriguez Vazquez*, 183 F.4th at 1165. Moreover, Petitioner was issued an arrest warrant by DHS on May 21, 2026 "pursuant to [8 U.S.C. § 1226(a)]" and he is in standard removal proceedings. (ECF No. 8 at 17, 27.) The Court finds 8 U.S.C. § 1226(a) applies. Thus, Petitioner is entitled to the procedural safeguards afforded by 8 U.S.C. § 1226(a).

### B. Fifth Amendment Due Process Clause

Petitioner alleges his detention without a pre-deprivation hearing violated due process. (ECF No. 1 at 26.) Respondents argue U.S.C. § 1226(c) applies and Petitioner has no statutory right to a bond hearing. (ECF No. 8 at 2.) Having determined § 1226(a) applies, the Court finds Respondents' argument unavailing.

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (2001). These due process rights extend to immigration proceedings, including detention and deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the

procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i. Liberty Interest*

"Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). To determine whether an individual's specific conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025).

Here, Petitioner gained a protected liberty interest in his continued freedom when he was released by immigration authorities on January 1, 2024. (ECF No. 8 at 9, 12.) Under *Morrissey*, this release was an implied promise that Petitioner would not be re-detained during the pendency of his immigration proceedings. *Morrissey*, 408 U.S. at 482. Petitioner's liberty interest was further strengthened when an immigration judge terminated his removal proceedings in November 2024. (ECF No. 8 at 14.) Even if he is ultimately removable, or his liberty is revocable, his established liberty interest is still protected by due process. *See Hernandez*, 872 F.3d at 993; *Zadvydas*, 533 U.S. at 693.

As this Court has found previously, along with many other courts in this District when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom as he awaits the outcome of his immigration proceedings. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Petitioner's criminal history does not alter the Court's conclusion. As discussed above,

Petitioner is not subject to mandatory detention because of his criminal history. "[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]" *Hernandez*, 872 F.3d at 981. Thus, Petitioner has a liberty interest in his release from immigration detention protected by the Due Process Clause.

*ii) Procedures Required*

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that interest accords with the Constitution. The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

As to the first *Mathews* factor — Petitioner's private interest — Petitioner has a substantial private interest in remaining free from detention. Despite Petitioner's strong liberty interest found above, Petitioner has been detained, separated from his community, and unable to work for over five months without notice or an opportunity to be heard. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention.

As to the second *Mathews* factor — the risk of erroneous deprivation — the Court finds the risk here is considerable where Petitioner has received no procedural safeguards such as a bond or custody redetermination hearing. *See H.F. v. Albarran*, No. 1:25-cv-01795-TLN-EFB, 2025 WL 3691081, at *5 (E.D. Cal. Dec. 19, 2025) (finding risk of erroneous deprivation to be considerable "particularly" where "Petitioner has already been released from incarceration twice: first from immigration detention on his own recognizance, and second from criminal detention").

8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53

F.4th 1189, 1196 (9th Cir. 2022). The statute provides "extensive procedural protections" including several layers of review of the initial custody determination, "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202. Petitioner did not receive the requisite extensive procedural protections of 8 U.S.C. § 1226(a). There is no evidence in the record that Respondents provided Petitioner an initial custody determination, as required, nor provided the basis for his detention. *See Zurita Navarro* v. *Warden Ctrl. Valley Annex Det. Facility*, No. 1:26-cv-05661-DAD-SCR, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026) (collecting cases and enumerating procedural violations of § 1226(a), including "failure to provide the petitioner with an initial custody determination either prior to or contemporaneously with detention," and "failure to provide the petitioner with the basis for the petitioner's continued detention"). The Court therefore concludes the risk that Petitioner is erroneously being deprived of liberty is considerable.

Finally, as to the third *Mathews* factor — government interest — the cost and time of procedural safeguards are minimal. Notice and custody determination hearings are routine processes for Respondents, indeed, they are the very safeguards owed to Petitioner by statute. Nor do Respondents argue they would be burdened.

Upon consideration of the *Mathews* factors, due process required notice and a hearing as to Petitioner's detention. Respondents have not provided sufficient notice or any hearing either pre- or post-detention in over five months of custody. Petitioner's detention thus violates the Fifth Amendment and Petitioner's procedural due process rights.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.) IT IS HEREBY ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner Christhopher B.P. (**A # 244-333-376**) from custody under an order of release on recognizance. At the time of release, Respondents must return all of Petitioner's documents and possessions. Respondents must file a **notice certifying compliance** with this provision of the Court's Order **within two (2) court days**

from the date of this Order.

2. Respondents are ENJOINED and RESTRAINED from re-detaining Petitioner, while subject to 8 U.S.C. § 1226, absent compliance with statutory and constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where the government shows by clear and convincing evidence: (1) Petitioner is subject to 8 U.S.C. § 1226(c) after issuing a proper charge for covered offenses, or (2) the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

3. Petitioner's Motion for TRO is DENIED as moot. (ECF No. 3.)

4. Petitioner's Motion to Proceed in Forma Pauperis is GRANTED. (ECF No. 2.)

5. Petitioner's Motion for appointment of counsel is DENIED as moot. (ECF No. 4.)

6. **The Clerk of Court is directed to serve Central Valley Annex with a copy of this Order**.

7. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATE: November 9, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE